STATE OF WISCONSIN     CIRCUIT COURT     MILWAUKEE COUNTY

---

SJ PROPERTIES SUITES, BUYCO, EHF,
Kringlunni 5,
103 Reykjavík,
Iceland,

SJ-FASTEIGNIR, EHF,
Kringlunni 5,
103 Reykjavik,
Iceland,

and

ASKAR CAPITAL, HF,
Sudurlandsbraut 12,
108 Reykjavik,
Iceland,

      Plaintiffs,

v.

SPECIALTY FINANCE GROUP, LLC
3284 Northside Parkway NW
Atlanta, Georgia 30327

      Defendant.

Case No:
Case Code: 30303

HON. TIMOTHY M. WITKOWIAK, BR. 22

CIVIL A



FILED AND
AUTHENTICATED

FEB 12 2010

JOHN BARRETT
Clerk of Circuit Court

---

## SUMMONS

---

THE STATE OF WISCONSIN

To SPECIALITY FINANCE GROUP, LLC, named above as Defendant:

    You are hereby notified that the Plaintiffs named above has filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

Within 20 days of receiving this Summons, you must respond with a written Answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an Answer that does not follow the requirements of the statutes. The Answer must be sent or delivered to the Court, whose address is Clerk of Circuit Court, 901 North 9th Street, Courthouse, Room 104, Milwaukee, Wisconsin 54495, and to HALLOIN & MURDOCK, S.C., Plaintiffs' attorneys, whose address is 839 North Jefferson Street, Fifth Floor, Milwaukee, Wisconsin 53202. You may have an attorney help or represent you.

If you do not provide a proper Answer within 20 days, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated February 12, 2010.

HALLOIN & MURDOCK, S.C.
Attorneys Plaintiffs.

Scott R. Halloin
State Bar No. 1024669

HALLOIN & MURDOCK, S.C.
839 North Jefferson Street
Fifth Floor
Milwaukee, Wisconsin 53202
p 414-732-2424
f 414-732-2422
mail to: shalloin@halloinmurdock.com

10CV002175

| | | |
|---|---|---|
| STATE OF WISCONSIN | CIRCUIT COURT | MILWAUKEE COUNTY |

SJ PROPERTIES SUITES, BUYCO, EHF,
Kringlunni 5,
103 Reykjavík,
Iceland,

SJ-FASTEIGNIR, EHF,
Kringlunni 5,
103 Reykjavik,
Iceland,

    and

ASKAR CAPITAL, HF,
Sudurlandsbraut 12,
108 Reykjavik,
Iceland,

    Plaintiffs,

    v.

SPECIALTY FINANCE GROUP, LLC
3284 Northside Parkway NW
Atlanta, Georgia 30327

    Defendant.

Case No:
Case Code: 30303

FILED
FEB 1 2 2010
JOHN BARRETT
Clerk of Circuit Court

## COMPLAINT

SJ Properties Suites, BuyCo, ehf, SJ-Fasteignir, ehf, and Askar Capital, hf, (collectively "Plaintiffs") complain against the Specialty Finance Group, LLC, as follows:

1. DOC Milwaukee, LP ("DOC Milwaukee"), is a Delaware Limited Partnership, whose principal office is located at 2222 Second Street, Fort Myers, Florida 33901. DOC Milwaukee is the owner of the property located at 1150 North Water Street, Milwaukee, Wisconsin 53202 (the "Property"). DOC Milwaukee is also the debtor in a Wisconsin chapter 128 receivership pending in Milwaukee County Circuit Court, captioned In re DOC Milwaukee, LP, Case Number 2009-CV-9785. This case is intended to resolve an intended priority dispute among four lenders who advanced funds for the construction of improvements at the Property.

## PARTIES

2. Plaintiff, Plaintiff SJ Properties Suites, BuyCo, ehf ("BuyCo"), is an Icelandic private limited company—more properly, the entity is denoted in Iceland as an einkahlutafélag, which is commonly abbreviated "ehf"—whose principal office is located at Kringlunni 5, 103 Reykjavík, Iceland, ID number 690806-1420. BuyCo has loaned funds to DOC Milwaukee for the construction of improvements at the Property.

3. Plaintiff, SJ-Fasteignir, ehf ("SJ-Fasteignir), is an Icelandic private limited company—more properly, the entity is denoted in Iceland as an einkahlutafélag, which is commonly abbreviated "ehf"—whose principal office is located at Kringlunni 5, 103 Reykjavík, Iceland, ID number 550807-0250. SJ-Fasteignir has loaned funds to DOC Milwaukee for the construction of improvements at the Property.

4. Plaintiff, Askar Capital, hf ("Askar"), is an Icelandic limited company—more properly, the entity is denoted in Iceland as a hlutafélag, which is commonly abbreviated "hf"—whose principal office is located at Sudurlandsbraut 12, 108

Case 2:10-cv-00198-RTR   Filed 03/10/10   Page 4 of 20   Document 1-2

Reykjavík, Iceland, ID number 441206-0110. Askar provided mezzanine financing for the Staybridge Hotel project located at the Property (the "Project").

5. Defendant, Specialty Finance Group, LLC ("SFG"), is a Georgia Limited Liability Company, whose principal office is located at 3284 Northside Parkway NW Atlanta, Georgia 30327. Upon information and belief, SFG is a subsidiary of Silverton Bank, National Association, Atlanta, Georgia ("Silverton"). SFG holds the mortgage on the Property.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under Wisconsin Statutes section 801.05(1)(d), (3), and (6).

7. Venue is proper under Wisconsin Statutes section 801.50(2)(a) and (b).

## FACTS COMMON TO ALL COUNTS

8. On or about November 9, 2006, DOC Milwaukee was formed to develop the Project at the Property.

9. On March 29, 2007, DOC Milwaukee received a loan commitment from SFG to fund a loan in the amount of $20,900,000 for the Project at the Property (the "Loan Commitment").

10. On or about January 9, 2008, DOC Milwaukee entered into a construction loan for the Project with SFG (the "SFG Loan Agreement").

11. Section 1.7 of the SFG Loan Agreement incorporates the Commitment Letter by reference, and Exhibit G to the SFG Loan Agreement is the Loan Commitment. The SFG Loan Agreement specifically states that "SFG agrees to make

3

and Borrower agrees to accept the Loan, subject to certain terms and conditions, a copy of which is attached as Exhibit G."

12. Section 1.5 of the SFG Loan Agreement states that Borrower's Equity Contribution was to be $12,993,302 or 25% of the total project cost, as defined in Section 1.42 and Exhibit C of the SFG Loan Agreement.

13. The SFG Loan Agreement, in Section 1.42, incorporated as Exhibit C, a "Cost Breakdown" for the Project as of January 9, 2008, the date the SFG Loan Agreement was executed.

14. The Cost Breakdown attached as Exhibit C to the SFG Loan Agreement reflects that DOC Milwaukee advanced $7,286,802.98 in equity as of September, 2007, that the total cost to complete the Project would be $26,317,603, and that the additional funds needed to complete the Project were $19,030,800.02. Because Borrower's Equity Contribution was defined in Section 1.5 of the SFG Loan Agreement as $12,993,302, it was contemplated at the time the Loan Agreement was executed that and additional $5,706,499.02 in equity over the $7,286,802.98 previously advanced.

15. As a result, if SFG fully funded the $20,900,000 loan called for in the Loan Commitment, which is incorporated by reference into the SFG Loan Agreement at Sec. 1.7 as Exhibit G, and if Borrower's Equity Contribution as defined in Section 1.5 of the SFG Loan Agreement was fully funded to $12,993,302, the total cash available to pay for improvements at the Project and Property would have been $33,893,302, and DOC Milwaukee's Borrower Equity Contribution would have been 38%, and amount that exceeded the 25% Borrower Equity Contribution stipulated in Section 1.5 of the SFG Loan Agreement.

4

16. Under Section 3.25 of the SFG Loan Agreement, if SFG determined that the remaining undisbursed portion of Borrower's Equity Contribution and the Loan is insufficient to fully complete the Improvements, SFG had the right to demand additional Borrower Equity Contributions, as stipulated in this provision of the SFG Loan Agreement. SFG owed DOC Milwaukee and its partners the obligation to construe and interpret this provision in good faith. Moreover, the SFG Loan Agreement set a general parameter for the interpretation of the "good faith" requirement by setting a 25% equity requirement under Section 1.5 of the SFG Loan Agreement.

17. The SFG Loan Agreement was secured by a mortgage on the Property, and assignment of the leases and rents and by the personal guarantees of Phillip E. Hugh, John Economou, and Steve Economou.

18. Plaintiffs BuyCo, SJ-Fasteignir, and Askar are not parties to the SFG Loan Agreement, but SFG was aware that these entities were funding the Borrow Equity Contribution stipulated under Section 1.5 of the SFG Loan Agreement. As a result, SFG specifically owed Plaintiffs an obligation to construe Section 3.25 of the SFG Loan Agreement, among other provisions, in good faith.

19. BuyCo, SJ-Fasteignir, and Askar and their respective owners, officers, and directors have not guaranteed the SFG Loan Agreement.

20. Based upon the promises contained in the SFG Loan Agreement and the oral promises made by SFG's loan officers, BuyCo, SJ-Fasteignir, and Askar agreed to advance $7,286,802.98 for the Project and improvements at the Property.

21. Around April 2008, just three months after SFG entered into the SFG Loan Agreement, SFG informed DOC Milwaukee that it was in default of the SFG Loan

5

Agreement. SFG asserted that the reason for the notice was "unauthorized cost overruns" at the Project. At the time the default was called, SFG had advanced $7,645,444.38 of funds, while DOC Milwaukee, from the Plaintiffs, had funded $7,286,802.98 in equity, giving the Project a 51% loan to 49% equity ratio.

22. The "unauthorized cost overruns" identified by SFG reflected a total construction cost increase to $25,400,000. Notably, this amount was actually less than the $26,317,603 "Cost Breakdown" contained in Exhibit C to the SFG Loan Agreement.

23. At the time SFG declared the SFG Loan Agreement in default in April 2008, DOC Milwaukee was not and had not been delinquent in any payments of interest or principal.

24. Even though SFG was protected by a 49% equity cushion, SFG threatened to accelerate the SFG Loan Agreement, which would have required DOC Milwaukee to advance $7,645,444.38 within days or face foreclosure. The impact of such a funding was to provide SFG with a 67% equity cushion for the Project.

25. Without justification, officers of SFG threatened the Plaintiffs that if the Plaintiffs did not advance additional funds to DOC Milwaukee for the Project, SFG would wipe out their interests in the Project.

26. At the time SFG declared the SFG Loan Agreement in default in April 2008, SFG had advanced only $7,605,866.98 under the SFG Loan Agreement.

27. SFG also promised that if Plaintiffs advanced additional funds, SFG would fund the remaining principal balance of the SFG Loan Agreement.

28. To avoid acceleration and foreclosure and to obtain the remaining loan proceeds, SFG required DOC Milwaukee to enter into a forbearance agreement.

29. DOC Milwaukee entered into a forbearance agreement with SFG on or about October 8, 2008 (the "First Forbearance Agreement").

30. Based on information and belief, DOC Milwaukee entered into the First Forbearance Agreement because, at that time, the SFG Loan Agreement acceleration and foreclosure would have wiped out millions of dollars of DOC Milwaukee's and its investors' equity and would have stopped work on the Project permanently.

31. On or about February 10, 2009, approximately thirteen months after SFG entered into the SFG Loan Agreement, SFG again informed DOC Milwaukee that it was in default of the SFG Loan Agreement.

32. Based on information and belief, this alleged default was based on SFG's contention that there were unanticipated cost increases for the Project, leaving the remaining loan proceeds insufficient to complete the Project.

33. As of February 10, 2009, SFG had funded $13,431,373.42 under the SFG Loan Agreement, while Plaintiffs had funded $17,419,807.75 through equity contributions and loans to DOC Milwaukee, or a 57% cushion.

34. At the time SFG declared the SFG Loan Agreement in default in February 2009, DOC Milwaukee was not and had not been delinquent in any payments of interest or principal.

35. Despite having adequate protection, SFG again threatened to accelerate the SFG Loan Agreement, which would have required DOC Milwaukee to advance $13,431,373.42 within days or face foreclosure.

36. Without justification, officers of SFG again threatened the Plaintiffs that if the Plaintiffs did not advance additional funds to DOC Milwaukee for the Project, SFG would wipe out their interests in the Project.

37. SFG also promised that if the Plaintiffs advanced additional funds, SFG would fund the remaining principal balance of the SFG Loan Agreement.

38. To avoid acceleration and foreclosure and to obtain the remaining loan proceeds, SFG again required DOC Milwaukee to enter into a forbearance agreement.

39. DOC Milwaukee entered into a second forbearance agreement with SFG on or about April 3, 2009 (the "Second Forbearance Agreement").

40. Based on information and belief, DOC Milwaukee entered into the Second Forbearance Agreement because, at that time, the SFG Loan Agreement acceleration and foreclosure would have wiped out millions of dollars of DOC Milwaukee's and its investors' equity and would have stopped work on the Project permanently.

41. During this process, SFG engaged in abusive lending practices, and has repeatedly threatened to sell the SFG Loan Agreement, including a specific threat to "sell the loan to a loan shark," if the Plaintiffs did not take immediate steps to complete the Project using their own funds.

42. Even though the Plaintiffs are not a party to or a guarantor of the SFG Loan Agreement, they have made loans, cash advances, and payments on the SFG Loan Agreement to keep work progressing at the Project and to avoid having their equity wiped out by SFG's threatened foreclosure.

43. Despite additional funds being advanced by the Plaintiffs, SFG failed to advance the remaining principal balance due under the SFG Loan Agreement.

8

Because of SFG's breach of its promises to fund, there are a number of unpaid subcontractors who have filed liens against the Project, with total liens exceeding $3,453,888.20.

44. The Plaintiffs have advanced funds directly to SFG to keep payments on the SFG Loan Agreement current through June 30, 2009.

45. Although the Plaintiffs have advanced funds to keep the loan current, SFG has now declared the SFG Loan Agreement in default for a third time and has advised on June 16, 2009, that will not accept any further curative payments after June 30, 2009 and advised that SFG intended to foreclose and "wipe out" Plaintiffs' interests, as well as the interests of all subcontractors.

46. Based on information and belief, the defaults alleged by SFG were caused in whole or in part by SFG's failure to timely release funds, which delayed the Project and gave rise to the events that SFG has relied on in declaring a default.

47. Under the terms of the SFG Loan Agreement, SFG contracted with Broadlands Financial Group, LLC ("Broadlands"), to serve as its construction inspector at the Project.

48. Broadlands served as SFG's agent, providing construction risk management services, including Project oversight and contract funds administration.

49. SFG required that DOC Milwaukee's payment applications be submitted in accordance with the procedure established by Broadlands.

50. Broadlands' specified procedure required that payment applications be submitted to Broadlands' project finance manager.

9

51. Upon receipt of a payment application, Broadlands' project finance manager was required to request a site inspection to confirm the accuracy of the payment application against the actual status of construction.

52. As SFG's construction inspector and agent, Broadlands failed to properly inspect the Project to confirm the accuracy of the payment application against the actual status of construction.

53. Based on information and belief, in reliance on its construction inspector, SFG released funds to pay payment applications that overstated the actual status of construction and that requested payment for work that had not yet been performed.

54. Based on information and belief, the defaults alleged by SFG, if true, were caused in whole or in part by SFG's construction inspector's failure to properly inspect the Project on a periodic basis to confirm the accuracy of the draw requests against the actual status of construction.

55. Although SFG contends that the SFG Loan Agreement was in default based on SFG's contention that there were unanticipated cost increases for the Project, SFG has failed to respond to any inquiries made by the Plaintiffs as to how or why SFG's construction inspector failed to discover these cost increases before the work was done.

56. On May 1, 2009, Silverton Bank, SFG's parent company was named as a debtor in an FDIC receivership proceeding (the "Silverton Receivership").

57. On June 5, 2009, the FDIC announced that the Silverton Receivership would be discontinued on June 29, 2009, due to the receiver bank's inability to sell Silverton's loan portfolios.

58. Despite repeated requests, SFG, Silverton, and the FDIC have failed to clarify who is in control of this SFG Loan Agreement.

59. On information and belief, SFG's and Silverton's own financial troubles contributed substantially to SFG's decision to improperly issue default notices, refusal to fully fund the SFG Loan Agreement and Loan Commitment, and fulfill oral promises to advance additional funds. At all times relevant hereto, SFG was motivated by its own cash needs and desire to avoid advancing additional funds for the Project.

60. Based on information and belief, there may be other, unknown lien claims already filed or yet to be filed against the Project or the Property.

61. SFG's first position lien is less than 40% of the amount actually advanced by Plaintiffs or incurred at the Project by subcontractors. In the end, SFG only advanced $13,431,373.42 of the $20,900,000 promised in the Loan Commitment and SFG Loan Agreement.

62. Silverton's and SFG's breaches and oppressive actions created duress conditions at the Project.

63. On information and belief, Silverton's and SFG's breaches and oppressive actions were wholly or partially attributable to Silverton and SFG's own states of financial duress.

64. The Plaintiffs have inquired of SFG as to how funds could have been misappropriated given Broadlands' inspections, and asked for SFG's cooperation with its investigation. Broadlands has refused to turn over any of the documents that relate to its inspections at the Project or the processing of draw requests, and SFG has refused to provide any cooperation with the Plaintiffs' investigation.

11

## COUNT I
## Unjust Enrichment

65. The Plaintiffs incorporate all other paragraphs of this complaint as if fully set forth in this cause of action.

66. Despite having adequate protection, SFG wrongfully issued default notices and used this as a pretext to breach the funding requirements of the Loan Agreement and Loan Commitment.

67. SFG's actions, conduct, and promises induced the Plaintiffs to advance $17,419,807.75 through equity contributions and loans to DOC Milwaukee, or a 57% cushion, well in excess of the protection stipulated in the SFG Loan Agreement.

68. SFG's actions, conduct, and promises induced DOC Milwaukee, LP to incur obligations to subcontractors based upon the reasonable expectation that SFG would fully fund the $20,900,000 amount stipulated in the Loan Commitment and SFG Loan Agreement if DOC Milwaukee kept its equity contribution to approximately 25%.

69. SFG will be unjustly enriched if it is allowed to maintain a first priority lien position with respect to any funds advanced after October 8, 2009, when it wrongfully insisted upon additional equity to be advanced.

70. Under section 7.02(b) of the SFG Loan Agreement, in the event of default, SFG had the right to perform or cause to be performed any and all work necessary to complete the Project in accordance with the plans. SFG owed a duty to DOC Milwaukee and its partners to exercise its rights in good faith and in a manner that did not unnecessarily jeopardize the interests of subordinate creditors or equity interests.

12

71. Under section 7.02(c) of the SFG Loan Agreement, in the event of default, SFG had the right to hire security personnel to protect the Property.

72. Under section 7.02(d) of the SFG Loan Agreement, in the event of default, SFG had the right to disburse the portion of the loan proceeds not previously disbursed to the extent necessary to complete the Project pursuant to the plans or to disburse additional funds above and beyond the remaining loan proceeds if such were necessary to complete the Project.

73. Despite having the contractual right to do so, SFG did not take any affirmative measures to assume possession of and complete the Project or to otherwise protect the physical state of the Property.

74. As a result of SFG's failure to take affirmative measures to protect the Property, a water leak has developed at the Property, which is causing damage at the Property.

75. Plaintiffs are creditors of DOC Milwaukee with a lower priority status than SFG.

76. Although they had no contractual obligation to take any affirmative measures, the Plaintiffs took steps to protect the physical state of the Property, including making payments for site security and insurance, and undertaking engineering assessments.

77. In an effort to protect the Property, Plaintiffs retained Kim Anderson, Ph.D., Director of Toxicology at GZA GeoEnvironmental, Inc., to conduct an investigation and assessment of the Property.

13

Case 2:10-cv-00198-RTR    Filed 03/10/10    Page 15 of 20    Document 1-2

78. Dr. Anderson's investigation and assessment of the Property is summarized in a report he prepared on or about July 2, 2009. A true and correct copy of Dr. Anderson's report is attached hereto as Exhibit A.

79. During his inspection of the Property, Dr. Anderson observed current and existing water intrusion at the Property, which he believes will cause extensive damage to both the installed and stored building materials within the building if no additional preventative measures are taken.

80. Despite break-ins, SFG has taken no steps to keep properly locked and secure.

81. Despite openings left exposed to the elements, SFG has taken no steps to close the openings to secure and preserve the asset.

82. Despite notice that utilities were being turned off, SFG has taken no steps to turn the utilities back on, leaving the asset without heating or cooling, creating conditions conducive to the growth of mold and rot.

83. SFG is and has been aware that the Plaintiffs have advanced and continue to advance additional funds to make repairs and otherwise protect the physical condition of the Property.

84. SFG has not indicated any willingness to advance funds to make repairs or otherwise protect the physical condition of the Property, and seems intent to let the Property deteriorate and rot, diminishing the Property's value.

85. SFG has not indicated any willingness to advance funds to complete the improvements in accordance with the Project's plans.

14

86. The funds the Plaintiffs have advanced to protect the Property are protecting and maximizing the value of the Property, which collateralizes the SFG Loan Agreement.

87. SFG has been unjustly enriched by the funds that the Plaintiffs have advanced to protect the Property.

88. It would inequitable for SFG to retain the benefit of the funds advanced by the Plaintiffs to protect the Property.

## COUNT II
### Equitable Subordination

89. Plaintiffs incorporate all other paragraphs of this complaint as if fully set forth in this cause of action.

90. SFG failed to advance the total principal loan it promised to advance under the SFG Loan Agreement and Loan Commitment.

91. SFG has declared the SFG Loan Agreement in default on the basis that the Project was under-funded.

92. Each time SFG declared the SFG Loan Agreement in default, DOC Milwaukee was not and had not been delinquent in any payments of interest or principal.

93. SFG repeatedly threatened to accelerate the SFG Loan Agreement, which would have required DOC Milwaukee to advance millions of dollars or face foreclosure.

94. SFG represented to the Plaintiffs that it would advance the remaining principal balance of the SFG Loan Agreement if the Plaintiffs advanced additional funds for the Project.

15

95. SFG repeatedly threatened to wipe out the Plaintiffs in the Project if the Plaintiffs did not advance additional funds for the Project.

96. Based on SFG's representations and in response to SFG's threats, the Plaintiffs advanced additional funds for the Project.

97. As a direct and proximate result of SFG's representations that it would advance the remaining principal balance of the SFG Loan Agreement and SFG's threats to accelerate the SFG Loan Agreement, SFG obtained additional collateral for the SFG Loan Agreement from the Plaintiffs.

98. Based on information and belief, SFG had no intention of disbursing the remaining principal balance of the SFG Loan Agreement and coerced the Plaintiffs to advance additional funds for the purpose of increasing the value of SFG's collateral on an under-collateralized loan.

99. SFG obtained an unfair advantage over the Plaintiffs by coercing them to advance additional funds for the Project in response to SFG's representations that it would advance the remaining principal balance of the SFG Loan Agreement and in response to SFG's threats to accelerate the SFG Loan Agreement.

100. SFG obtained an unfair advantage over the Plaintiffs by informing them that it would no longer accept curative payments after the Plaintiffs advanced additional funds to make repairs and otherwise protect the physical condition of the Property.

101. Due to SFG's inequitable conduct, the proceeds of the SFG Loan Agreement should be equitably subordinated to all or a portion of the funds that the Plaintiffs advanced for the improvement, repair, and protection of the Property, and for all costs associated with the receivership.

16

## COUNT III
### Promissory Estoppel

102. The Plaintiffs incorporate all other paragraphs of this complaint as if fully set forth in this cause of action.

103. SFG promised in the SFG Loan Agreement and Loan Commitment to advance $20,900,000.00 for the Project.

104. SFG, by its loan officers, also orally promised to advance additional funds over and above the amount promised in the SFG Loan Agreement and Loan Commitment.

105. Based upon the promises contained in the SFG Loan Agreement and the oral promises made by SFG's loan officers, the Plaintiffs agreed to advance $7,286,802.98 for the Project.

106. At the time the second forbearance agreement was executed, SFG also promised the Plaintiffs that if they advanced additional funds, SFG would fund the remaining principal balance of the SFG Loan Agreement and Loan Agreement.

107. The Plaintiffs advanced additional funds the Plaintiffs loaned, advanced, and paid an additional $10,419,807.75 toward the Project because of SFG's promises and representations that it would fund the SFG Loan Agreement and Loan Commitment.

108. Despite receiving additional collateral in the Project from the Plaintiff's advancement of additional funds, SFG failed to fully fund the loan.

109. The Plaintiffs would not have expended additional funds if they had known that SFG did not intend, and would not fully fund, the SFG Loan Agreement and Loan Commitment.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

A. Awarding actual monetary damages, statutory damages, and penalties to Plaintiffs and against the Defendants, including interest, attorneys' fees, and costs;

B. Equitably subordinating the funds that SFG advanced to DOC Milwaukee to the funds advanced by Plaintiffs after October 8, 2008, obligations incurred by DOC Milwaukee, LP to lien creditors, and for the subsequent protection and repair of the Property, including all costs associated with the receivership; and

C. Awarding any other relief the Court deems just and proper.

Dated February 12, 2010.

HALLOIN & MURDOCK, S.C.<br>
Attorneys for Plaintiff SJ Properties Suites, BuyCo, ehf, SJ-Fasteignir, ehf, and Askar Capital, hf<br>
<br>
Scott R. Halloin<br>
State Bar No. 1024669

HALLOIN & MURDOCK, S.C.
839 North Jefferson Street
Suite 503
Milwaukee, Wisconsin 53202
p 414-732-2424
f 414-732-2422
shalloin@halloinmurdock.com

S:\Clients\ASKAR-BuyCo\Seth Dizard, DOC Milwaukee LP v. SFG (Milwaukee County 09-CV-11574)\Pleadings\SFG Liability suit.doc

18

Case 2:10-cv-00198-RTR    Filed 03/10/10    Page 20 of 20    Document 1-2