# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SJ PROPERTIES SUITES, BUYCO, EHF,
SJ-FASTEIGNIR, EHF, and
ASKAR CAPITAL, HF,

                **Plaintiffs,**

        **v.**                                 **Case No. 10-CV-00198**

SPECIALTY FINANCE GROUP, LLC,

                **Defendant.**

---

# DECISION AND ORDER
Revised August 25, 2010

---

        This action relates to a construction loan agreement for a hotel and condominium real estate development project located at 1150 North Water Street, in downtown Milwaukee, Wisconsin (the "Milwaukee Project"). This Decision and Order addresses the motion for remand pursuant to 28 U.S.C. § 1447(c) (2006) filed by SJ Properties Suites, BuyCo, ehf ("BuyCo"); SJ-Fasteignir, ehf ("Fasteignir"); and Askar Capital, hf, ("Askar") (collectively, the "Plaintiffs"), and several additional motions filed by the parties.

## MOTION TO REMAND

        In moving to remand this matter to state court, the Plaintiffs maintain that this Court lacks subject matter jurisdiction over this matter because the action does not satisfy the jurisdictional requirement of 28 U.S.C. § 1332(a) that the amount in controversy exceed the

sum or value of $75,000, exclusive of interest and costs. They also contend that the Court does not have jurisdiction over this action because the state court has already exercised its jurisdiction over the property that is the subject of the dispute between the parties.

## Background[1]

The parties involved in this dispute are BuyCo, Fasteignir, and Askar and the defendant, Specialty Finance Group, LLC ("SFG"). BuyCo and Fasteignir are Icelandic private limited companies, referred to as an einkahlutafélag ("ehf"), whose principal offices are located in Reykjavík, Iceland. (Compl. ¶¶ 2, 3.) Askar is an Icelandic limited company, referred to as an hlutafélag ("hf"), whose principal office is also located in Reykjavík, Iceland. (Compl. ¶ 4.) SFG is a Georgia limited liability company whose principal office is located in Atlanta, Georgia. (Compl. ¶ 5.)

On approximately November 9, 2006, DOC Milwaukee, LP ("DOC Milwaukee") was created to develop the property located at 1150 North Water Street (the "Property"). (Compl. ¶ 8.) DOC Milwaukee received a loan commitment (the "Loan Commitment") on March 29, 2007, from SFG to advance a loan in the amount of $20,900,000 for the Milwaukee Project.[2] (Compl. ¶ 9.) DOC Milwaukee and SFG executed a construction

---

[1] The facts are derived from the allegations of the Complaint. At this stage in the proceedings, SFG has not filed an answer to the Complaint. However, by its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), SFG disputes many of the allegations of the Complaint.

[2] In its brief in support of the motion to dismiss, SFG maintains that the final loan agreement signed by the parties stipulated, per an amendment to the original agreement, that the loan amount would be for $14,900,000. (Br. Supp. Def's. Mot. Dismiss 5.) As part of the amended agreement, DOC Milwaukee was not required to secure a letter of credit in the amount of $6,000,000, because BuyCo was "injecting" an additional $6,000,000 of cash equity into the Milwaukee Project. (*See* Br. Supp. Def's. Mot. Dismiss 3 (citing Amendment to Commitment, included in Ex. G to Loan Agreement).) While not determinative of the Plaintiffs' motion to remand, the Court notes the facts are in dispute.

loan (the "SFG Loan Agreement") for the Milwaukee Project on January 9, 2008. (Compl. ¶ 10.) The construction loan was secured by a mortgage. The Plaintiffs acknowledge that they are not in privity to the SFG Loan Agreement. (Compl. ¶¶ 18, 19, 42, 76.) Under the SFG Loan Agreement, it was stipulated that DOC Milwaukee would make an equity contribution of $12,993,302 or 25% of the total cost of the Milwaukee Project. (Compl. ¶ 12.) The Plaintiffs maintain that, in reliance on the March 29, 2007, Loan Commitment from SFG and upon the oral promises of SFG's loan officers, they advanced $7,286,802.98 to the Milwaukee Project as of September 2007. (Compl. ¶ 14.)

Under the SFG Loan Agreement, SFG had the right to demand additional equity contributions from DOC Milwaukee if SFG determined that the amount of the construction loan together with the agreed equity contribution from DOC Milwaukee was insufficient to complete the Milwaukee Project. (Compl. ¶ 16.) The Plaintiffs maintain that SFG had a duty to interpret the contract provision granting this right in good faith. (*Id.*)

Approximately three months after the SFG Loan Agreement was executed, SFG notified DOC Milwaukee that it was in default, citing "unauthorized cost overruns." (Compl. ¶ 21.) At the time of the first default notice, April 2008, SFG had advanced $7,645,444.38.[3] (Compl. ¶ 21.) DOC Milwaukee was not in default of the SFG Loan Agreement due to any delinquencies in payments on the interest or principal that SFG had advanced. (Compl. ¶ 23.)

---

[3]The Complaint alleges two different figures as the amount that SFG had advanced on the SFG Loan Agreement at the time of the first default in April 2008. (*Compare* Compl. ¶ 21 ($7,645,444.38) & Compl. ¶ 26 ($7,605,866.98).) The Court will use the figure set forth in paragraph 21 of the Complaint.

SFG then threatened the Plaintiffs that if they did not agree to advance additional funds to DOC Milwaukee for the Milwaukee Project, SFG would accelerate the SFG Loan Agreement, forcing DOC Milwaukee into foreclosure proceedings on the mortgage and by implication, wiping out the Plaintiffs' investment in the Milwaukee Project. (Compl. ¶¶ 24, 25.) In return for the Plaintiffs' promise to advance additional funds to DOC Milwaukee, SFG promised to fund the remaining principal balance of the SFG Loan Agreement. (Compl. ¶ 27.) To avoid acceleration and foreclosure on the Milwaukee Project and to obtain the remaining loan proceeds, DOC Milwaukee entered into a forbearance agreement with SFG on approximately October 8, 2008. (Compl. ¶ 28.)

On about February 10, 2009, SFG again notified DOC Milwaukee that it was in default on the SFG Loan Agreement due to unanticipated cost increases for completing the Milwaukee Project with the result that the undistributed balance remaining on the SFG Loan Agreement and the equity contributions of DOC Milwaukee were insufficient to cover the cost of completing the Milwaukee Project. (Compl. ¶¶ 31, 32.) At the time of the second default notice, SFG had advanced $13,431,373.42 on the SFG Loan Agreement while the Plaintiffs had advanced $17,419,807.75 to DOC Milwaukee to complete the Milwaukee Project. (Compl. ¶ 33.) DOC Milwaukee was not delinquent in any payments on the principal or interest on the SFG Loan Agreement at the time of the second default. (Compl. ¶ 34.)

Once again, SFG demanded that the Plaintiffs inject additional funds into the Milwaukee Project, threatening that if the Plaintiffs did not agree to advance the funds to DOC Milwaukee, SFG would accelerate the SFG Loan Agreement and foreclose on the property,

wiping out the Plaintiffs' investment in the Milwaukee Project. (Compl. ¶¶ 35, 36.) SFG also promised that if the Plaintiffs advanced additional funds to the Milwaukee Project, it would agree to advance the remaining undistributed principal balance on the SFG Loan Agreement. (Compl. ¶ 37.) To avoid acceleration and foreclosure on the Milwaukee Project and to obtain the remaining loan proceeds, DOC Milwaukee entered into a second forbearance agreement with SFG on approximately April 3, 2009. (Compl. ¶¶ 38, 39.)

The Plaintiffs allege that, during this period, SFG engaged in abusive lending practices, including repeated threats to sell the SFG Loan Agreement and a specific threat to "sell the loan to the loan shark," if the Plaintiffs did not take immediate action to complete the Milwaukee Project using their own funds. (Compl. ¶ 41.) The Plaintiffs further allege that, even though the Plaintiffs are not parties to, or guarantors of the SFG Loan Agreement, they have made loans and other cash advances for the Milwaukee Project, and they have also made payments on the SFG Loan Agreement on behalf of DOC Milwaukee to avoid default and to keep the work on the property progressing towards completion. (Compl. ¶ 42.) The Plaintiffs maintain that despite these efforts, SFG has not fulfilled its promise to advance the remaining undistributed principal balance on the SFG Loan Agreement. (Compl. ¶ 43.) They allege that, due to SFG's breach of its promise to advance funds, there are a number of unpaid subcontractors who have placed liens on the Property, amounting to more than $3,453,888.20 in unpaid obligations. (*Id.*)

The Plaintiffs allege that they have made payments on the SFG Loan Agreement directly to SFG to keep payments on the interest and principal current through June 30, 2009.

(Compl. ¶ 44.) Despite these payments, SFG declared the SFG Loan Agreement in default a third time and notified the Plaintiffs that it would not accept any further payments on the SFG Loan Agreement after June 30, 2009, and that it intended to foreclose the Property and "wipe out" the Plaintiffs' interest in the Property as well as the lien interests of all subcontractors. (Compl. ¶ 45.)

The Plaintiffs maintain that the unanticipated cost overruns cited by SFG as reasons for default were the result of SFG's construction inspector's failure to properly inspect the Milwaukee Project. (Compl. ¶ 54.) SFG designated Broadlands Financial Group, LLC ("Broadlands") to serve as its agent, providing construction risk management services that included oversight of the Milwaukee Project and contract funds administration. (Compl. ¶¶ 47, 48.) Under the SFG Loan Agreement, DOC Milwaukee was required to submit payment applications in conformity with the procedure established by Broadlands. (Compl. ¶ 49.) Under this procedure, DOC Milwaukee was required to submit all payment applications to Broadlands' project finance manager. (Compl. ¶ 50.) The project finance manager was to request a site inspection to confirm the accuracy of the payment application against the actual status of construction so that the distributed payments were made for work that was actually performed. (Compl. ¶ 51.)

The Plaintiffs further allege that SFG, in reliance on Broadlands' payment procedure, distributed funds for payment applications that "overstated the actual status of construction and that requested payment for work that had not yet been performed." (Compl. ¶ 53.) Thus, the unanticipated cost overruns cited as reasons for default were caused in whole

or in part by SFG's construction inspector's failure to accurately verify the payment applications against the actual status of construction. (Compl. ¶ 54.)

In addition, the Plaintiffs maintain that SFG's own financial troubles were a motivating factor in its decision to "improperly issue default notices, refusal to fully fund the SFG Loan Agreement and Loan Commitment, and fulfill oral promises to advance additional funds" to DOC Milwaukee to complete the Milwaukee Project. (Compl. ¶ 59.) The referenced financial troubles of SFG are that on May 1, 2009, Silverton Bank, National Association ("Silverton"), SFG's parent company, was placed into receivership by the Federal Deposit Insurance Corporation ("FDIC"). (Compl. ¶ 56.) On June 5, 2009, the FDIC announced that the Silverton receivership proceeding would be discontinued on June 29, 2009, due to the receivership's inability to sell Silverton's loan portfolios. (Compl. ¶ 57.) The Plaintiffs allege that SFG "was motivated by its own cash needs and desire to avoid advancing additional funds for the [Milwaukee] Project." (Compl. ¶ 59.)

Based on these alleged events, the Plaintiffs make three claims for relief: 1) unjust enrichment, 2) equitable subordination, and 3) promissory estoppel. The unjust enrichment claim rests on the proposition that beginning with the Loan Commitment of $20,900,000 to DOC Milwaukee and subsequent promises, the Plaintiffs were induced to advance $17,419,807.75 to the Milwaukee Project. (Compl. ¶ 67.) In addition, SFG had a contractual right, in the event of a default, to perform or cause to perform any work necessary to complete the Milwaukee Project, to advance funds that had not already been distributed, as well as funds above the SFG Loan Agreement amount, in order to take possession of the

7

Property to either complete the construction or to protect the physical condition of the Property. (Compl. ¶¶ 70-73.) SFG has not attempted to exercise its contractual right. (Compl. ¶ 73.) As a result, the Plaintiffs have advanced additional funds to protect the physical state of the Property, including making payments for security, insurance, and engineering assessments of the Property. (Compl. ¶ 76.) The Plaintiffs maintain that SFG will be unjustly enriched by the Plaintiffs' affirmative efforts to protect the physical state of the Property because they are protecting the value of SFG's security interest, while the Plaintiffs have an unsecured lien interest in the property. (Compl. ¶¶ 86-88.)

By the Plaintiffs' equitable subordination claim, they assert that they were "coerced . . . to advance additional funds for the purpose of increasing the value of SFG's collateral on an under-collateralized loan." (Compl. ¶ 98.) The Plaintiffs further maintain that it would be inequitable, given SFG's bad faith dealing during the course of the Milwaukee Project, for SFG to retain its secured-creditor status and that SFG's security interest should be subordinated in whole or in part to the interest of the lower-priority lien holders: the Plaintiffs and the other subcontractors. (Compl. ¶ 101.)

The Plaintiffs maintain, on their promissory estoppel claim, that they relied on SFG's promise that it would advance the funds toward the Milwaukee Project under the SFG Loan Agreement and Loan Commitment and the oral promises of SFG's loan officers that it would advance additional funds over and above the amount promised in the Loan Agreement and Loan Commitment. (Compl. ¶¶ 104, 105.) In reliance on these promises, the Plaintiffs advanced the first $7,286,802.98 toward the project in September 2007. (Compl. ¶ 105.)

Furthermore, in reliance on SFG's promises that it would fully fund the SFG Loan Agreement and Loan Commitment, the Plaintiffs advanced an additional $10,419,807.75 toward the Milwaukee Project. (Compl. ¶ 107.) The Plaintiffs contend that if they knew SFG did not intend to fully fund the SFG Loan Agreement, they would not have advanced additional funds toward the Milwaukee Project. (Compl. ¶ 109.)

In their prayer for relief, the Plaintiffs do not make any specific request for a monetary sum of damages. Rather, they seek "actual monetary damages, statutory damages, and penalties . . . including interest, attorneys' fees, and costs." (Compl. 18.) The Plaintiffs also seek an equitable subordination of the "funds advanced by SFG to DOC Milwaukee to the funds that the Plaintiffs advanced after October 8, 2008, obligations incurred by [DOC Milwaukee] to lien creditors, and for the subsequent protection and repair of the Property, including all costs associated with the receivership." (Compl. 18.)

Also relevant to this dispute are two actions that are pending in the Circuit Court for Milwaukee County, Wisconsin. On June 22, 2009, BuyCo filed an action in the state circuit court requesting appointment of a receiver for DOC Milwaukee, placing it into a Chapter 128 receivership proceeding. *See SJ Properties Suites, BuyCo, ehf, v. DOC Milwaukee County L.P.*, Milwaukee County Circuit Court, No. 2009CV009785, *available at* http://wcca.wicourts.gov (last visited Aug. 23, 2010). The receiver, Seth E. Dizard ("Dizard"), has been appointed and has the responsibility of seizing and preserving all of DOC Milwaukee's property, including the Property, for the benefit of DOC Milwaukee's creditors.

(App. Docs. Opp'n Remand Ex. 1.) The receiver is responsible for winding up the affairs of DOC Milwaukee. (*Id*.) The receivership proceedings are still ongoing.

On July 24, 2009, Dizard filed a separate action for declaratory judgment in the Milwaukee County Circuit Court. *See Dizard v. Specialty Fin. Group, LLC.*, Milwaukee County Circuit Court, No. 2009CV011574, *available at* http://wcca.wicourts.gov (last visited Aug. 23, 2010). In that action, Dizard sought a declaration of SFG's priority status on its mortgage interest in the Property against the other competing lien interests of the subcontractors. BuyCo, Fasteignir, and Askar filed a motion to intervene in this case. The motion to intervene is virtually identical to the Complaint filed in this action. The Circuit Court dismissed the receiver's action on the basis that the receiver lacked standing. (App. Docs. Opp'n Remand Ex. 5.) The Circuit Court Order states:

> [SFG's] motion to dismiss is granted with prejudice meaning that the receiver is precluded from seeking any further declaratory judgment relief based upon the allegations in the complaint in this action. However, it does not prevent the receiver from asking the court that appointed him receiver in this Chap. 128 proceeding for such relief or direction as may be authorized under Chap. 128, Wis. Stats. . . . . This ruling holds that the receiver does not have standing to seek the relief requested in this independent action outside the confines of the Chap. 128 proceeding.

(*Id*.) The Circuit Court Order states further that the "action is dismissed as to the intervening contractors, subcontractors or lien holders without prejudice and the court is not making any findings or conclusions about their rights to bring an independent declaratory judgment action in any other case." (*Id*.)

## Analysis

In seeking remand, the Plaintiffs argue that the amount in controversy does not exceed $75,000 because this is an action for declaratory judgment; and, the damages are too speculative to make a determination of whether the amount in controversy will exceed the jurisdictional amount required because there is no way to accurately predict the amount that ultimately will be recovered in the foreclosure sale of the Property. The Plaintiffs further maintain that the Court is precluded from exercising its jurisdiction over the subject matter of the dispute because the state court has already exercised its jurisdiction over the Property.

On February 12, 2010, the Plaintiffs filed a summons and Complaint in the Circuit Court for Milwaukee County, Wisconsin. SFG was served with the Complaint on about February 18, 2010. (Notice of Removal ¶ 2.) SFG subsequently filed a motion for removal pursuant to 28 U.S.C. § 1441 on March 10, 2010. Pursuant to 28 U.S.C. § 1446(b), the notice of removal is timely because it was filed within 30 days of SFG's receipt of the Plaintiffs' Complaint. The Plaintiffs now move to remand the matter to the state court pursuant to 28 U.S.C. § 1447(c).

For venue to be proper where jurisdiction is founded solely on diversity of citizenship, the action must be brought in

> 1) a judicial district where any defendant resides, if all defendants reside in the same State, 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or 3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  This action focuses on the events surrounding the Milwaukee Project; therefore, venue is proper.  Furthermore, the parties agree that venue is proper in this judicial district.

SFG bears the burden of establishing federal jurisdiction, and the Court will interpret the removal statute narrowly in favor of the Plaintiffs' choice of forum in the state court.  *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).  SFG bases removal on federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Section 1332(a) requires complete diversity of citizenship between the parties and that the amount in controversy exceed $75,000.  *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *Schur*, 577 F.3d at 758.  A federal court has an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from either party to a dispute.  *Hertz Corp. v. Friend*, __ U.S. __, 130 S.Ct. 1181, 1193 (2010); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  When a plaintiff who files suit in a state court could have invoked the original jurisdiction of the federal courts, the defendant may remove the action to the federal court.  *See* 28 U.S.C. § 1441(a); *Schur*, 577 F.3d at 758.

With respect to the citizenship of the parties, SFG is a limited liability company that is wholly owned by Silverton.  The citizenship of a limited liability company is determined by the citizenship of each of its members.  *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009).  A national banking association is determined to be a citizen of the state in which it has its main office.  *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 318-19 (2006).

Silverton is the sole member of SFG and Silverton's main office is located in Georgia. Thus, SFG is a citizen of Georgia for purposes of diversity.

In its notice of removal, SFG alleges that BuyCo and Fasteignir are both einkahlutafélags incorporated under the laws of Iceland with their principal offices in Reykjavík, Iceland. SFG also alleges that Askar is a hlutafélag incorporated under the laws of Iceland. However, Plaintiffs' Complaint characterizes both BuyCo and Fasteignir as private limited companies, and Askar as a limited company. (Compl. ¶¶ 2-4.) The citizenship of a limited liability company is determined by the citizenship of its members whereas a corporation is deemed to be a citizen of the state where it is incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Although the parties do not dispute that diversity exists, the Court has an independent duty to determine whether subject matter jurisdiction is present. The Plaintiffs should clarify whether the entities organized under Icelandic law are equivalent to corporations or limited liability companies under United States' law. In addition, in the event that any Plaintiff is the equivalent of a limited liability company, the Plaintiffs must set forth the citizenship of each member of that entity, until the facts underlying the basis for that entity's citizenship are disclosed. However, at present, the Court is satisfied that jurisdiction is proper for purposes of diversity of citizenship.

A. *State/Federal Concurrent Jurisdiction and the Doctrine of Prior Exclusive Jurisdiction*

The Plaintiffs argue that this Court may not entertain jurisdiction over the subject matter of this dispute because the state court has already exercised jurisdiction over the Property. In so contending, the Plaintiffs rely on *State Engineer of State of Nevada v. South*

*Fork Bank of Te-Moak Tribe of West Shoshone Indians of Nevada*, 339 F.3d 804, 811 (9th Cir.

2003), for the application of the doctrine of prior exclusive jurisdiction.  (Pls. Br. 10.)  The

Plaintiffs assert further that in cases where prior exclusive jurisdiction is present, the doctrine

is a mandatory jurisdictional limitation.  *See Palmer v. Texas*, 212 U.S. 118, 125 (1909).

The principle of prior exclusive jurisdiction is illustrated by *Kline v. Burke*

*Construction Company*, 260 U.S. 226, 229 (1922), stating:

> Where the action is *in rem* the effect is to draw to the federal court
> the possession or control, actual or potential, of the *res* [i.e., the
> property that is the subject matter of the dispute], and the exercise
> by the state court of jurisdiction over the same *res* necessarily
> impairs, and may defeat, the jurisdiction of the federal court
> already attached.  The converse of the rule is equally true, that
> where the jurisdiction of the state court has first attached, the
> federal court is precluded from exercising its jurisdiction over the
> same *res* to defeat or impair the state court's jurisdiction.

The doctrine of prior exclusive jurisdiction developed out of the recognition that

both federal and state courts have concurrent jurisdiction over property within their shared

districts and that the interests of comity and the desire to avoid piecemeal litigation warranted

the sound principle that a federal court should cede jurisdiction to a state court over property

when that court has first exercised its power over the property and vice versa.  The invocation

of the doctrine is appropriate in cases where

> two suits are *in rem* or quasi *in rem*, requiring that the court or its
> officer have possession or control of the property which is the
> subject of the suit in order to proceed with the cause and to grant
> the relief sought, the jurisdiction of one court must of necessity
> yield to that of the other . . . . the court first assuming jurisdiction
> over the property may maintain and exercise that jurisdiction to the
> exclusion of the other.  This is the settled rule with respect to suits

in equity for the control by receivership of the assets of an insolvent corporation.

*Penn Gen. Cas. Co. v. Commonwealth of Penn.*, 294 U.S. 189, 195 (1935); *see also*, *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939). Jurisdiction attaches on the filing of the complaint in court, either federal or state, where process issues in due course. *Penn Gen.*, 294 U.S. at 196 (citing *Palmer*, 212 U.S. at 129).

However, the doctrine of prior exclusive jurisdiction may not be invoked where an action is strictly *in personam*, seeking relief in the form of damages or an injunctive order. *Princess Lida*, 305 U.S. at 465-66. The reason for this lies in the important distinction between actions *in personam* and actions either *in rem* or *quasi in rem*. The Supreme Court outlined the distinctions between each: "[a] judgment *in personam* imposes a personal liability or obligation on one person in favor of another. A judgment *in rem* affects the interests of all persons in designated property. A judgment *quasi in rem* affects the interests of particular persons in designated property." *Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958). Thus, a judgment *in personam* does not implicate a party's interest in a designated property, but only imposes a personal liability or obligation on one party in favor of another. Because of this distinction, the doctrine of prior exclusive jurisdiction will not apply in the circumstance where one court exercises its jurisdiction over a specific property and another court exercises its jurisdiction over individuals.

The relevant question in this case then is whether the state court action and the current action in this Court are *in rem* or quasi *in rem* and, if so, whether the doctrine precludes this Court's exercise of jurisdiction over the subject matter of the dispute. The

Circuit Court for Milwaukee County has exercised its jurisdiction over the Property in the receivership proceeding. When BuyCo filed its receivership complaint, the state court's jurisdiction attached to DOC Milwaukee's property, which includes the premises located at 1150 North Water Street. The receivership action is *in rem* because it affects the interests of secured and non-secured creditors in the Property, as well as DOC Milwaukee's interest.

Both unjust enrichment and promissory estoppel are common law remedies over which the state court had subject matter jurisdiction and could render a valid judgment. However, equitable subordination is not a common law contract remedy. In *In re Mader's Store for Men, Inc.*, the Wisconsin Supreme Court explained that the power of a court in a Chapter 128 proceeding to equitably subordinate the claims of a creditor to those of other creditors does not derive from "any statute specifically conferring it, but is within the inherent authority of a court of equity in administering the insolvent estate 'to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.'" 254 N.W.2d 171, 184 (Wis. 1977) (quoting *Pepper v. Litton*, 308 U.S. 295, 305 (1939)). The *Mader* court relied on the language of Wisconsin Statute section 128.15 (1937) directing the court to "make such order as shall be just" in adjudicating creditor's claims to which objections have been filed as the basis of the state court's power to subordinate claims. 254 N.W.2d at 184-85. The language of § 128.15 relied on by *Mader* remains unchanged. *See* Wis. Stat. § 128.15 (2007-08).

DOC Milwaukee is currently in receivership proceedings in which Dizard has been appointed receiver. It is the province of the tribunal administering the Chapter 128

proceeding to determine the priority of lien creditors during the liquidation of DOC Milwaukee's assets for the benefit of its outstanding creditors. Under the receivership proceeding, the creditors must submit their claims to the receiver before the expiration of the period of time for filing claims. Section 128.15(1)(b) directs that "[a]t any time after the expiration of the period of time limited for the filing of claims, the receiver or assignee or, upon the receiver's or assignee's refusal or failure to act, *any creditor may file written objections to any claim specifying the grounds for the objection*." (Emphasis added.)

In order for the Plaintiffs to prevail on their equitable subordination claim, they must follow the procedure as set out by § 128.15, submitting their claim to the receiver and filing any objections with the tribunal adjudicating the Chapter 128 proceeding. The tribunal adjudicating the Chapter 128 proceeding has the proper authority to subordinate the claims of creditors based on equity. *Mader* makes clear that it is the "*court of equity . . . administering the insolvent estate*" that has the power to equitably subordinate claims. 254 N.W.2d at 184. In the instant case, that court is the court presiding over the receivership proceeding.

Furthermore, an equitable subordination claim is necessarily by its nature a quasi *in rem* claim because it affects the interests of particular persons or entities in the Property. *See Mader*, 254 N.W.2d at 185 n.14; *Hanson* 357 U.S. at 246 n.12. Therefore, this Court may not exercise its jurisdiction over the Property because the tribunal adjudicating the Chapter 128 receivership proceedings already acquired jurisdiction over the Property. This Court cannot impose upon the receivership proceedings by interfering with that tribunal's control over the

Property.  The doctrine of prior exclusive jurisdiction over the equitable subordination claim precludes this Court from interfering with the state tribunal's control over the Property.

The Court has an individual responsibility to determine whether jurisdiction is present and may, *sua sponte*, dismiss any or all claims in a complaint over which there is found to be a jurisdictional limitation.  *See Three Keys, Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 225-30 n.7 (3d Cir. 2008); *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Palmer*, 212 U.S. at 125.  This Court does not have subject matter jurisdiction over the equitable subordination claim because that claim is quasi *in rem* and the tribunal administering the Chapter 128 proceeding has jurisdiction over that claim.  As such, this Court is precluded from exercising jurisdiction over the Property.  It is worth noting that if, as the Plaintiffs maintain, this action were solely for equitable subordination, the doctrine of prior exclusive jurisdiction would mandate that this Court dismiss the entire action; however, that is not the case here.  In summation, the Plaintiffs' equitable subordination claim is dismissed without prejudice because, under the doctrine of prior exclusive jurisdiction, this Court lacks subject matter jurisdiction over that claim.

What remains is whether the claims for promissory estoppel and unjust enrichment are actions *in personam*, *in rem*, or quasi *in rem*.  The remedy for promissory estoppel is either money damages or an order specifically enforcing the promise.  *See Hoffman v. Red Owl Stores, Inc.*, 133 N.W.2d 267, 276-77 (Wis. 1965).  The remedy for unjust enrichment is damages "limited to the value of the benefit conferred on the defendant," affording a plaintiff restitutionary relief.  *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557

F.3d 469, 477 (7th Cir. 2009)(citing *Mgmt. Computer Servs., Inc. v. Hawkins*, 206 Wis.2d 158, 557 N.W.2d 67, 79-80 (Wis. 1996)). Both promissory estoppel and unjust enrichment are actions *in personam* because the judgment will impose a personal liability or obligation upon SFG and do not affect the nature of either parties' interest in the Property. *See Hanson*, 357 U.S. at 246 n.12. Therefore, the doctrine of prior exclusive jurisdiction is not applicable to either claim. Consequently, whether the amount in controversy exceeds $75,000 as required by 1332(a) must be analyzed solely under the claims for unjust enrichment and promissory estoppel.

Before addressing those two claims, the Court addresses the Plaintiffs' contention that the only relief that they seek is declaratory judgment. The Plaintiffs' Complaint does not contain any claim solely for declaratory judgment except to the extent that such relief is implicit in the equitable subordination claim. Nevertheless, under federal pleading requirements, it is not necessary for the complaint to make overt statements of claims. *See Ryan v. Ill. Dep't of Children and Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997); *Shannon v. Shannon*, 965 F.2d 542, 552-53 (7th Cir. 1992). A complaint need only contain a short and plain statement showing the pleader is entitled to relief. *See Shannon*, 965 F.2d at 552-53.

To the extent that the Plaintiffs seek an adjudication of their rights in the Property, a claim which is quasi *in rem*, the doctrine of prior exclusive jurisdiction does not preclude this Court from exercising its jurisdiction and its concomitant power to adjudicate the quantum of the parties' interests in the Property even though the receivership proceeding

is *in rem* and a claim for declaratory judgment of the parties' interest in the Property is also quasi *in rem*. A claim for declaratory relief would be viable in the federal and state court because the principle that underlies the doctrine of prior exclusive jurisdiction "has no application to a case . . . wherein the plaintiff seeks merely an adjudication of his right of his interest as a basis of a claim against a [property] in the possession of a state court." *Princess Lida*, 305 U.S. at 466. A plaintiff is free to seek an adjudication as to the "quantum of his interest" in a particular property, even if both actions are *in rem* or quasi *in rem*. *Id.* at 467.

The doctrine of *res judicata* will necessarily be implicated in the action where either this Court or the tribunal administering the Chapter 128 proceeding renders a judgment on the parties' interests in the Property. However, this does not pertain to the priority of the parties' interest in the Property because priority relates to the administration of the Property. The priority of the creditors' interests is the responsibility of the receivership proceeding to adjudicate, not this Court.

### B. Section 1332(a)–Amount in Controversy Requirement

The amount in controversy is the amount necessary to satisfy the plaintiff's total demand for relief either on the day that the suit is first filed, *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273 (7th Cir. 2001), or, in the case of removal, on the date that the action was removed, *BEM I, LLC. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir. 2002). The defendant invoking federal jurisdiction has the burden of proving by a preponderance of the evidence that the amount in controversy meets the jurisdictional minimum. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). In the case where the plaintiff does not

provide specific information about the value of his claim in the prayer for relief, a "good-faith estimate of the stakes is acceptable if it is . . . supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). Once the defendant has met his burden of establishing the requisite amount in controversy minimum, the plaintiff can only defeat jurisdiction by showing that, to a legal certainty, the amount of the claim is less than the jurisdictional minimum required for diversity cases. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Meridian*, 441 F.3d at 541.

In their brief in opposing the Plaintiffs' motion for remand, SFG relies upon *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997), asserting that they need only offer evidence which proves "to a reasonable probability that jurisdiction exists." (Def.'s Br. Opp'n Remand 5.) However, *Meridian* states that the phrase "'[r]easonable probability that jurisdiction exists' . . . is banished from our lexicon." 441 F.3d at 543. The *Meridian* court explained the provenance of the "reasonably probable" language and the mistaken interpretation of that phrase:

> The requirement of "proof" comes from *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (if plaintiff's "allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof."). The "reasonable probability" language comes from *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993), and has been repeated in six other decisions of this circuit plus more than 80 decisions of district judges within our jurisdiction – and, as far as we can ascertain, by no judge outside this circuit. [citations omitted] Judges of the seven district courts within this circuit now regularly dismiss suits under the diversity jurisdiction with the observation that the plaintiff has not "proved" that there is a "reasonable probability" that the judgment will exceed the threshold.

> *Shaw*'s mention of "reasonable probability that jurisdiction exists"
> thus has been taken to mean that uncertainty about the stakes must
> be resolved against the proponent of jurisdiction. That's not what
> *Shaw* set out to establish. In retrospect it is clear that the turn of
> phrase was infelicitous. We now retract that language; it has no
> role to play in determining the amount in controversy.

441 F.3d at 539-40. The *Meridian* court's retraction of the "reasonable probability" language did not overrule any prior decision, 441 F.3d at 540 n.†[4]; however, the phrase is no longer an appropriate standard by which to determine whether the defendant has met its burden of proof.

The *Meridian c*ourt explained the appropriate standard of proof for determining whether the amount in controversy requirement is met: "[w]hat the proponent of jurisdiction must 'prove' is contested factual assertions – for example, where each party resides plus any plans for change of residence, in order to establish domicile, or what state issued a corporation's charter. Jurisdiction itself is a legal conclusion, a *consequence* of facts rather than a provable 'fact.'" *Id.* at 540-41. Proving that the amount in controversy exceeds the jurisdictional requirement is an easy matter when the plaintiff's complaint makes a clear statement of the monetary relief sought. In this case, as in *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993), and *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447-49 (7th Cir. 2005), the Plaintiffs have not made a clear statement of the amount of monetary relief sought in their bill of complaint, asking only for generalized "monetary damages." (Compl. ¶ 18.)

---

[4] The symbol denoted appears in the original publication of the opinion cited.

*Meridian* provides guidance for such situations stating that the removing defendant may establish what the plaintiff stands to recover by

> calculation from the complaint's allegations (as in *Brill*) . . . . any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint (what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost to the defendant).

*Id.* at 541-42 (citing *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997)).

In *Brill*, the court made a clear distinction between the question of what damages the plaintiff will likely recover and what amount is "in controversy" between the parties. 427 F.3d at 448. The plaintiff, as *Brill* pointed out, may very well ultimately recover less than the jurisdictional minimum amount in controversy, but this does not prevent removal, and by extension, warrant a remand. *Id.* The appropriate factual matter that the defendant must establish by a preponderance of the evidence is what the amount in controversy is, not what the plaintiff will ultimately recover. *Id.*; *see also*, *Meridian*, 411 F.3d at 543. Once the defendant has established that the amount in controversy exceeds $75,000, only in a case where there is a "legal certainty" that the judgment will be less than the jurisdictional requirement will federal diversity jurisdiction be defeated. *See St. Paul*, 303 U.S. at 288-90.

SFG can meet its burden of proof that the amount in controversy exceeds $75,000 by establishing that either claim by the Plaintiffs for unjust enrichment or promissory estoppel exceeds $75,000, or that both claims aggregated meet the requisite amount in controversy. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007);

*Lloyd v. Kull*, 329 F.2d 168, 170 (7th Cir. 1964). At least one of the plaintiffs listed in this action must meet the jurisdictional minimum amount in controversy. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005) (holding that where at least one plaintiff in a multi-plaintiff action meets the jurisdictional minimum, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over the claims of other plaintiffs in the same action provided that the claims are part of the came case or controversy).

The remedy for a claim of promissory estoppel may take the form of either injunctive relief – i.e., by enforcing the defendant's promise – or monetary damages. *See Hoffman*, 133 N.W.2d at 276-77. The goal of relief for promissory estoppel is to put the plaintiff back to where he was before he relied on the defendant's promise to his detriment. *Id.* The amount of damages allowed in actions for promissory estoppel "may be determined by the plaintiff's expenditures or change of position in reliance as well as by the value to him of the promised performance." *Id.* at 277.

In the instant case, the Plaintiffs' Complaint does not make a specified request for a monetary sum for their promissory estoppel claim. However, the Plaintiffs state that in reliance on SFG's promises, the Plaintiffs advanced the first $7,286,802.98 toward the Milwaukee Project in September of 2007. (Compl. ¶ 105.) Furthermore, in reliance on SFG's promises that it would fully fund the SFG Loan Agreement and Loan Commitment, the Plaintiffs advanced an additional $10,419,807.75 toward the Milwaukee Project. (Compl. ¶ 107.) The Plaintiffs state that had they known that SFG did not intend to fully fund the SFG Loan Agreement and Loan Commitment, they would not have advanced the additional funds.

(Compl. ¶ 109.)  The Plaintiffs state that they changed position in the total amount of $17,706,610.73 in reliance on SFG's promises.  At this juncture, it is of no consequence whether the Plaintiffs will be able to prove the basis of their promissory estoppel claim.  The only relevant issue is what the amount in controversy is, not whether the Plaintiffs will succeed.  *See Brill*, 427 F.3d at 448.  The alleged amount in controversy for the promissory estoppel claim is $17,706,610.73, far exceeding the $75,000 requirement.  Therefore, subject matter jurisdiction over this action is proper.

Even if the Court were to grant injunctive relief to the Plaintiffs, the amount in controversy meets the jurisdictional requirement.  As stated in *Meridian*, the amount in controversy may be determined either by the amount that the plaintiff stands to recover, or by the cost to the defendant to comply with an injunctive order.  441 F.3d at 542; *see also*, *Uhl v. Thoroughbred Tech. and Telecomms., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d at 610.  In the event of an injunction enforcing SFG's promise to fully fund the Loan Agreement and the Loan Commitment, the cost to comply with the order would undoubtedly exceed $75,000.  According to the Complaint, SFG has funded $13,431,373.42 of the Loan Agreement.  (Compl. ¶ 33.) Therefore, fully funding the Loan Agreement of $20,900,000 would cost SFG $7,468.626.58.[5] SFG has met its burden of proof because the Plaintiffs' complaint establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000.  Because the

---

[5] If the Loan Agreement amount reflects the amended agreement to fund $14,900,000, the cost to SFG to fully fund the amended Loan Agreement would be $1,468,626.58, which still exceeds the jurisdictional minimum.

amount in controversy pertaining to the claim for promissory estoppel exceeds the jurisdictional requirement, the Plaintiffs' motion for remand is denied.

Although the Plaintiffs' unjust enrichment claim does not specify the amount they have expended in order to protect the Property, it is not necessary to examine this claim further to determine whether the claim meets the required amount in controversy. The claim for unjust enrichment may be aggregated with the claim for promissory estoppel, which exceeds the jurisdictional requirement; therefore, pursuant to § 1332(a), this Court has subject matter jurisdiction over both claims for promissory estoppel and unjust enrichment.

It is not possible to ascertain from the face of the Complaint the reliance damages of each individual Plaintiff's promissory estoppel claim. However, at least one plaintiff will meet the jurisdictional minimum though the other two plaintiffs may not.[6] Therefore, in the event that two of the named plainitiffs in this action do not meet the jurisdictional minimum amount in controversy, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over those two plaintiffs' claims.

## NON-DISPOSITIVE MOTIONS

There are a number of non-dispositive motions pending that the Court will now address. The Plaintiffs filed a Civil Local Rule 7(h) expedited non-dispositive motion to stay the case pending a decision on the Plaintiffs' motion for remand. Because this Decision and

---

[6] The promissory estoppel claim is determined to be $17,706,610.73. If two of the plaintiffs only advanced $75,000 each, the remaining plaintiff would have advanced $17,556,610.73, exceeding the jurisdictional minimum. Given the amount in controversy, there is no circumstance that all three plaintiffs will fail to meet the jurisdictional minimum amount in controversy.

Order addresses the Plaintiffs' motion for remand and denies that motion, the Plaintiffs' non-dispositive motion to stay the case is moot and, therefore, is denied.

The Plaintiffs also filed a Civil Local Rule 7(h) non-dispositive motion to extend time to file a response brief to the SFG's motion to dismiss pending a decision on their motion to remand. The Plaintiffs' non-dispositive motion to extend time to file response brief is granted. The Plaintiffs may file their response to SFG's 12(b)(6) motion to dismiss on or before September 20, 2010. SFG may file its reply on or before October 8, 2010.

On April 9, 2010, the Plaintiffs filed a Civil Local Rule 7(h) expedited non-dispositive motion to extend the time to amend their pleadings as a matter of course if their motion to remand is denied. They state that an extension of time is necessary to prevent the Plaintiffs from having to file amended pleading requesting jurisdiction, while simultaneously challenging jurisdiction with a motion to remand.

Because this is a procedural matter, Federal Rule of Civil Procedure 15(a) governs this issue. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Federal Rule of Civil Procedure 15(a)(1) provides that a party "may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." The Plaintiffs served their summons and complaint upon SFG about February 18, 2010. SFG served its Rule 12(b)(6) motion on March 24, 2010. The time to amend as a matter of course began to run on March 25, 2010, *see* Fed.

R. Civ. P. 6(a)(1)(A),[7] and expired on April 19, 2010. However, with exception of the time to act under a few specific rules – that do not include the rule for amendment of pleadings – Rule 6(b)(1)(A) allows the Court, for good cause, to extend the time to do an act, if the request is made before the original time expires. *See* Fed. R. Civ. P. 6(b)(1)(A) & (b)(2). The Plaintiffs have established good cause for an extension of time to amend their pleading, and therefore, their motion is granted. They may file an amended Complaint on or before September 20, 2010. In their amended pleading, the Plaintiffs must clarify whether the entities organized under Icelandic law are equivalent to corporations or limited liability companies under United States' law and, in the event that any such entities are deemed to be limited liability companies, set forth the citizenship of each member of that entity, until the facts underlying the basis for that entity's citizenship are disclosed. *See* Civil L.R. 8.

The Court also notes that, in their reply brief in support of their motion for remand, the Plaintiffs discussed justifications for a consolidation of the multiple cases pending in the state and federal courts. If the Plaintiffs wish to petition the Court for a consolidation of the multiple actions pending in this District, they may do so by proper motion setting forth their reasons for consolidation and which pending actions should be consolidated. *See* Fed. R. Civ. P. 7(b)(1); Fed. R. Civ. P. 42; Civil L.R. 42.

Also pending is SFG's Civil Local Rule 7(h) expedited non-dispositive motion for substitution of the defendant and to correct the caption. SFG requests, pursuant to Federal

---

[7]Under Federal Rule of Civil Procedure 6(a), the day on which a period begins is excluded and the last day is included, with certain exceptions not applicable here.

Rule of Civil Procedure 25(c), that this Court order the substitution of 2010-1 SFG Venture LLC ("Venture") for it as the defendant. Venture is a Delaware limited liability company with its principal office located at 450 Park Avenue, New York, New York. (*See* Ex. B attach. to SFG's Civil Local Rule 7(h) Expedited Non-Dispositive Motion for Substitution of the Defendant and to correct the Caption.)

According to SFG's motion, on May 18, 2010, SFG executed an "Allonge, Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, and Assignment of Leases and Rents and Other Loan Documents," assigning its interests in the "Loan Documents" to the FDIC, in the FDIC's capacity as the receiver for Silverton in its receivership proceedings in Georgia. On that same day, FDIC executed an "Allonge, Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, and Assignment of Leases and Rents and Other Loan Documents" (the "Assignment Agreement"), assigning its rights and interest in the "Loan Documents" to Venture. According to the Assignment Agreement, Venture now has all "right, title, and interest" in the mortgage that SFG entered into with DOC Milwaukee.

Rule 25(c) "does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7C *Federal Practice and Procedure* § 1958 (3d ed. 2010). The nature of Rule 25(c) "vests a great deal of discretion in the hands of the court. It is not mandatory that a substitution be made in every case of a transfer of interest." *Panther*

*Pumps & Equip. Co., Inc. v. Hydrocraft, Inc.*, 566 F.2d 8, 16 (7th Cir. 1977) (citing *McComb v. Row River Lumber Co.*, 177 F.2d 129 (9th Cir. 1949)).

In this matter, the record indicates that the Plaintiffs are not a party to the Loan Agreement or Loan Commitment entered into by SFG and DOC Milwaukee. The Plaintiffs are not pursuing claims based on the Loan Agreement or Loan Commitment because they are not a party to those agreements. The Plaintiffs' promissory estoppel and unjust enrichment claims only pertain to the interactions between the Plaintiffs and SFG based on quasi-contract theories. Venture's interest in the Property is not implicated in this action because the Plaintiffs' claim for equitable subordination has been dismissed in this proceeding. Any claim for equitable subordination will implicate Venture's interest in the Property in the Chapter 128 proceeding pending in the Wisconsin state courts, not this action. Because Venture does not have a claim pending against it in regard to the Loan Agreement or Loan Commitment that implicates its interest in the Property, substitution is not appropriate in these circumstances. Therefore, SFG's request for substitution is denied.

The Plaintiffs also filed a Civil Local Rule 7(h) expedited non-dispositive motion to stay the decision on SFG's motion for substitution of the defendant and to correct the caption pending the decision on remand. The Court has resolved SFG's motion for substitution and stay; therefore, the motion for additional time is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Plaintiffs' motion to remand pursuant to 28 U.S.C. § 1447(c) (Docket No. 15) is **DENIED**;

The Plaintiffs' claim for equitable subordination is **DISMISSED WITHOUT PREJUDICE**;

The Plaintiffs' Civil L.R. 7(h) expedited non-dispositive motion to stay the case pending a decision on the Plaintiffs' motion for remand (Docket No. 19) is **DENIED**;

The Plaintiffs' Civil L.R. 7(h) expedited non-dispositive motion to extend time to file response brief pending a decision on the Plaintiffs' motion for remand (Docket No. 20) is **GRANTED**;

The Plaintiffs may file their response to SFG's 12(b)(6) motion to dismiss on or before **September 20, 2010**, and SFG may file its reply thereto on or before **October 8, 2010**.

The Plaintiffs' Civil L.R. 7(h) expedited non-dispositive motion to extend time to amend the pleadings pending a decision on the Plaintiffs' motion for remand (Docket No. 21) is **GRANTED**;

The Plaintiff may file an amended Complaint on or before **September 20, 2010.**

SFG's Civil L.R. 7(h) expedited non-dispositive motion for substitution of the Defendant and to correct the caption (Docket No. 34) is **DENIED**; and,

The Plaintiffs' Civil L.R. 7(h) expedited non-dispositive motion to stay decision on SFG's motion for substitution of the Defendant and to correct the caption pending a decision on remand (Docket No. 37) is **DENIED**.

Dated at Milwaukee, Wisconsin this <u>25th</u> day of August, 2010, *nunc pro tunc* August 24, 2010.

**BY THE COURT**

*<u>s/ Rudolph T. Randa</u>*
**Hon. Rudolph T. Randa**
**U.S. District Judge**
